UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | ) ) ) | **CASE NO. 1:17-MD-2804** |
| | ) | **JUDGE POLSTER** |
| **THIS DOCUMENT RELATES TO:** "*Hy-Vee Cases*" | ) ) ) ) | |
| | ) ) | **ORDER GRANTING MOTIONS FOR LEAVE TO AMEND** |

This Court earlier designated two cases as "Hy-Vee Bellwether Cases:" *Allamakee County, Iowa v. Purdue Pharma*, Case No: 1:18-op-45983 (Track 24), and *Emmet County, Iowa v. Purdue Pharma L.P.*, Case No: 1:21-op-45051 (Track 25). *See* MDL docket no. 6241. Plaintiffs filed motions for leave to amend. *See* MDL docket nos. 6281, 6282. Hy-Vee filed a joint response in opposition and Plaintiffs filed a joint reply. *See* MDL docket nos. 6340, 6370. For the reasons stated below, the motions to amend are **GRANTED**.

**A.** **Introduction.**

As an initial matter, the Court notes it stated as follows in its first MDL Case Management Order ("CMO"): "If a case is later designated as a bellwether for motion practice or trial, a separate CMO will be entered that will provide for another opportunity to amend." Docket no. 371 at 1 (clarifying docket no. 232). The propriety of this provision was approved by the Sixth Circuit. *See In re: Meijer, Inc.*, 2022 WL 20701236, at *1 (6th Cir. Nov. 10, 2022) (denying mandamus).

This Court did enter a separate CMO providing plaintiffs in the Hy-Vee Bellwether Cases with another opportunity to amend. Docket no. 6241 at 3. Thus, although plaintiffs filed a motion

for leave to amend, they did not need leave; permission was already given in the first MDL Case Management Order. *See In re: Meijer, Inc..*, 2022 WL 20701236, at *1 (This "district court's [first] scheduling order explicitly provided permission for plaintiffs to amend their complaint if their case was selected as a bellwether. When this case was selected as a bellwether, the plaintiffs exercised their right to amend and added Meijer as a defendant. Because the district court's scheduling order permitted such amendment from the outset, plaintiffs did not need the district court's leave to amend.").[1]

The Court's *Hy-Vee Case Management Order* also provided, however, that Hy-Vee could "choose[] to move to strike an amended complaint." Docket no. 6241 at 3. The Court thus interprets Hy-Vee's response to the motion for leave as a motion to strike. Essentially, Hy-Vee asks the Court to strike those parts of the amended complaints that: (1) add four new related defendants; and (2) set forth a theory of alter ego liability. The Court addresses each argument below.

**A.      New Defendants.**

The amended complaints state claims against not only Hy-Vee but also Amber Specialty Pharmacy ("Amber"), Hy-Vee Pharmacy Solutions ("HVPS"), Redbox Rx, ("Redbox"), and Vivid Clear Rx ("Vivid"). Plaintiffs allege these defendants are each subsidiaries of Hy-Vee. Complaint at 1 n.1 & ¶¶45-59. Regarding the first three entities, Hy-Vee asserts each had a "zero or *de minimis* opioid market share" and argues they are therefore not "proper defendants in this litigation."

---

[1] The heading of Section B in the Court's *Hy-Vee Case Management Order* reads: "Motion for Leave to File Amended Complaints." But the language in Section B makes clear no motion for leave is required: "Plaintiffs who wish to amend their complaints must file and serve their amended complaints within 45 days of entry of this Order." Docket no. 6241 at 3.

Response at 2, 3.

Plaintiffs respond that Hy-Vee's market share assertions are "based on facts outside the pleadings;" moreover, those facts are based on data the plaintiffs have not had a chance to examine and test in discovery. Reply at 8. Plaintiffs contend the question of whether Hy-Vee's market share was so low that it cannot support a claim of liability is "an issue for summary judgment . . . or trial," not a motion to amend or motion to dismiss. *Id.* at 8-9.

The positions taken by defendant Hy-Vee and the bellwether plaintiffs here are essentially identical to the positions taken by the parties in the *Ogdensburg* PBM bellwether case. There, the PBMs argued the plaintiff "certainly should not be allowed to add new dispensing-related claims against defendants that dispensed such a tiny number of prescriptions over a decade or more." Docket no. 6026 at 2. Plaintiff responded that it disputed the PBMs' "factual assertions . . . [which], in any event, are extrinsic to the pleadings and cannot be considered here." *Id.* The Court agreed with the plaintiff and allowed amendment, concluding leave should be freely given "even if the apparent likelihood of the [plaintiff's] success on its proposed additional claims is low." *Id.* at 3.

In this case, just as in *Ogdensburg*, "[the defendants] do not assert the [plaintiff] has engaged in undue delay, or has a bad faith or a dilatory motive, or would force the [defendants] to suffer any prejudice." *Id.* Accordingly, the Court will not strike those parts of the amended complaints that add the four Hy-Vee subsidiary defendants.[2] Whether plaintiffs' claims against those defendants fail

---

[2] The Court does note, however, that plaintiffs make the following statement, which the Court expects will be followed: "In light of the averments [by Hy-Vee's counsel] . . . Plaintiffs do not intend to pursue claims against [Redbox] . . . ." Reply at 1 n.1.

for lack of market share must be decided at some later point in this case.[3] That said, the Court provides additional direction to the parties in Section C, below.

**B.     Alter Ego.**

Hy-Vee asserts the Court "should strike Plaintiffs' attempt to create a place holder in their Proposed Amended Complaints for a potential future claim of alter ego liability," and contends that "Plaintiffs offer no facts giving rise to a reasonable inference that the corporate veil may be pierced under Iowa law." Response at 5. The Court agrees that Plaintiffs' complaints are scant in this regard. Plaintiffs' reply offers details that should have been alleged in the complaints. *See* reply at 3-6 (reciting details of the relationships between Hy-Vee and its subsidiaries). Still, the Court concludes the better course is not to strike the allegations of alter ego liability at this time and instead address the issue later, if necessary. *See City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 641 (N.D. Cal. 2020) ("this Court will reserve this alter-ego determination until after the parties have the benefit of a full trial record") (citing *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 3553892, at *6 (N.D. Ohio Aug. 5, 2019)).

Once again, however, the Court refers the parties to its additional directions in Section C, below.

---

[3] Hy-Vee's market share arguments appear to be properly decided via summary judgment or trial. Hy-Vee also argues the Court should not allow plaintiffs to name Vivid as a defendant because: (i) Vivid is a PBM; (ii) the amended complaint "is devoid of any factual allegations pertaining to Vivid . . . or even pharmacy benefit managers generally," response at 4; (iii) the amended complaint against Vivid thus "cannot survive a motion to dismiss", *id*, at 5; and (iv) allowing amendment to add Vivid as a defendant is therefore futile. The Court concludes this question is better decided in the context of an actual motion to dismiss, if necessary, and not a motion to amend or motion to strike.

C. **Stipulation Regarding Family Defendants.**

Although the Court's rulings above work to deny Hy-Vee's motion to strike claims and allegations regarding its four subsidiaries (Amber, HVPS, Redbox, and Vivid), the Court retains a practical concern—that is, that "trials with many defendants, many theories of liability, and many causes of action will be too long, too complicated, and unintelligible to a jury." Docket no. 5219 at 3 (granting leave to amend in PBM bellwether cases).

In other cases where a plaintiff named numerous members of a "Defendant Family," including parents, subsidiaries, and other related entities, the Court urged the parties to agree to terms allowing dismissal of claims against all but the principal Family members. The parties regularly responded with formal stipulations ratifying the Court's requests. *See, e.g.,* docket nos. 5535, 5536 (parties in PBM bellwether cases agreeing to dismissal of various Defendant Family members, continued discovery production from the dismissed defendants, and terms on how a judgment will operate against a dismissed defendant).

The Court strongly urges the parties to reach a similar stipulation in these Hy-Vee Bellwether Cases and to do so as soon as reasonably possible.

**IT IS SO ORDERED.**

/s/ *Dan Aaron Polster*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

**Dated:** November 13, 2025

5